**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. ________________**

CEDARFIRM LLC,

Plaintiff,

v.

The Partnerships, Unincorporated Associations Identified on Schedule A,

Defendants.

_______________________________________________ /

## COMPLAINT

CEDARFIRM LLC ("Plaintiff" or "CEDARFIRM"), hereby brings the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

## INTRODUCTION

1. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's EXLEAF trademark, U.S. Trademark Registration No. 7,817,152. The EXLEAF trademark registration is valid, subsisting, and in full force and effect. A true and correct copy of the federal trademark registration certificate for the EXLEAF mark is attached hereto as **Exhibit 1**.

2. Defendants create numerous e-commerce stores that are advertising, offering for sale, and selling infringing and counterfeit EXLEAF products to unknowing consumers. Defendants attempt to avoid liability by concealing their identities, the full scope, and interworking of their illegal activities. These e-commerce stores share distinctive identifiers, such as design elements and the similarities among the infringing products they offer, establishing a clear

connection between them. This connection suggests that Defendants' unlawful activities arise out of the same transaction, occurrence, or series of transactions or occurrences.

3. Plaintiff is forced to file this action to combat Defendants' infringement on Plaintiff's registered EXLEAF trademark as well as to protect unknowing consumers from purchasing infringing products over the internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademark as a result of Defendants' actions and seeks injunctive and monetary relief.

## **JURISDICTION AND VENUE**

4. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a) – (b) and 28 U.S.C. § 1331.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. This Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Florida, through their fully interactive e-commerce stores operating under the seller aliases ("Seller Aliases") identified on the attached Schedule A.

6. Specifically, Defendants purposefully availed themselves to do business with Florida residents by operating one or more interactive e-commerce stores, through which Florida residents can purchase infringing products bearing Plaintiff's federally registered trademark. Each of the Defendants has targeted sales from Florida residents by operating online stores that offer shipping to the United States, including Florida, accept payment in U.S. dollars and, on information and belief, has sold products that infringe Plaintiff's federally registered trademark. Each of the Defendants is committing tortious acts in Florida, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Florida.

## THE PARTIES

**Plaintiff**

7. Plaintiff is a limited liability company organized in the State of Wyoming, with its principal place of business at 30 N Gould St Ste R, Sheridan, Wyoming, United States 82801.

8. Plaintiff is the owner of all rights, title and interest in the EXLEAF mark, U.S. Trademark Registration No. 7,817,152. *See* Ex. 1. The registration is valid, subsisting, unrevoked, unchallenged and uncancelled. The registration for the EXLEAF mark constitutes *prima facie* evidence of validity and of Plaintiff's exclusive right to use the EXLEAF mark pursuant to 15 U.S.C. §1057(b).

9. Plaintiff has licensed and authorized e-commerce merchants to promote, market, and sell a range of electric hair crimpers, electric hair clippers, electric razors, razor blades, depilatory appliances, eyelash tweezers, nail nippers, nail files, eyebrow razors, pedicure sets and related products in International Class 8 under its EXLEAF mark. These goods are offered through selected third-party e-commerce platforms, including Walmart.com. The EXLEAF mark enjoys broad promotion throughout the United States and worldwide, and merchandise sold under the EXLEAF mark has generated substantial sales and revenue.

10. Genuine products bearing the EXLEAF mark are distributed through authorized e-commerce merchants over third-party platforms. The authorized e-commerce stores feature proprietary content, images and designs exclusively authorized by Plaintiff. Sales of EXLEAF products represent a considerable portion of Plaintiff's business.

11. Plaintiff's EXLEAF mark is a distinctive trademark that represents quality, reputation and goodwill. Plaintiff has invested substantial resources in licensing, advertising, and promoting the EXLEAF mark. Defendants have never been authorized to use the EXLEAF mark.

**Defendants**

12. Defendants are individuals and business entities identified on the attached Schedule A, who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

13. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed on Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to discover Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

**Defendants' Unlawful Conducts**

14. The success of Plaintiff's EXLEAF brand has resulted in significant counterfeiting and infringement. Plaintiff has identified numerous e-commerce stores offering infringing products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, DHgate, and Temu, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers throughout the United States, including Florida and in this Judicial District.

15. According to a U.S. Customs and Border Protection (CBP) report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over

$3.3 billion, an increase of $2.0 billion from 2020. *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection (attached hereto as **Exhibit 2**). Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong. *Id.*

16. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L.&BUS. 157, 186 (2020) (attached hereto as **Exhibit 3**); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) (attached hereto as **Exhibit 4**) and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. Ex. 4 at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. Exhibit 4 at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." Ex. 3 at pp. 186-187.

17. On information and belief, Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers, including Florida,

using one or more Seller Aliases, offer shipping to the United States, including Florida, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold infringing products to residents of Florida.

18. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online merchants. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use its EXLEAF trademark, and none of the Defendants are authorized retailers of genuine EXLEAF Products.

19. On information and belief, Defendants also deceive unknowing consumers by incorporating the EXLEAF trademark, without authorization, into the content, text, and/or meta tags of their e-commerce stores, thereby manipulating internet search engines and diverting search results intended for the genuine products.

20. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling infringing products. Such seller alias registration patterns are one of many common tactics used by e-commerce store

operators like Defendants to conceal their identities and the full scope and interworking of their infringing and counterfeiting operation, and to avoid being shut down.

21. Furthermore, e-commerce stores operating under the Seller Aliases often share unique identifiers such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, infringing products sold by the Seller Aliases bear similar irregularities, suggesting that the infringing products were from a common source and that Defendants are likely interrelated.

22. E-commerce store operators like Defendants are in constant communication with each other via Chinese social media apps such as QQ and WeChat, and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

23. Infringers and counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

24. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the EXLEAF trademark in connection with the advertisement, distribution, offering for sale, and sale of infringing products into the United States and Florida over the Internet.

25. Defendants' unauthorized use of the EXLEAF trademark in connection with the advertising, distribution, offering for sale, and sale of infringing products, including the sale of the infringing products into the United States, including Florida, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I - TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**

26. Plaintiff repleads and incorporates by reference paragraphs 1 through 25 of this Complaint as though fully set forth herein.

27. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of the federally registered EXLEAF trademark in connection with advertising, promoting, sales, offering for sale, distribution, and/or advertising of infringing goods.

28. Plaintiff is the exclusive owner of the EXLEAF trademark. Plaintiff's United States Registration for the EXLEAF trademark is in full force and effect. *See* Ex. 1. The EXLEAF trademark is a highly distinctive mark, especially associated with personal care products and related accessories. Consumers have come to expect great quality from products bearing the EXLEAF trademark.

29. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using the EXLEAF

trademark without Plaintiff's permission. On information and belief, Defendants have knowledge of Plaintiff's rights in the EXLEAF trademark and are willfully infringing and intentionally using the EXLEAF trademark without Plaintiff's permission. Defendants' willful, intentional, and unauthorized use of the EXLEAF trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of infringing products among the general public.

30. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of infringing products.

31. Plaintiff has no adequate remedy at law. Unless Defendants' infringing actions are enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and to the goodwill of its EXLEAF trademark.

**COUNT II - FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125 (a))**

32. Plaintiff repleads and incorporates by reference paragraphs 1 through 25 of this Complaint as though fully set forth herein.

33. Defendants' promotion, marketing, offering for sale, and sale of counterfeit products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit and/or infringing products by Plaintiff.

34. By using the EXLEAF trademark in connection with the sale of counterfeit and/or infringing EXLEAF products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of counterfeit products.

35. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the infringing products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in concert with them be permanently enjoined and restrained from:

   a. using the EXLEAF mark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine EXLEAF product or is not authorized by Plaintiff to be sold in connection with the EXLEAF mark;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine EXLEAF product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the EXLEAF mark;

   c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit EXLEAF products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   d. further infringing the EXLEAF mark and damaging Plaintiff's goodwill; and

   e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or

offered for sale, and which bear any of Plaintiff's trademarks, including the EXLEAF mark, or any reproductions, counterfeit copies, or colorable imitations thereof, or the EXLEAF mark;

f. using, linking to, transferring, selling, exercising control over, or otherwise owning online marketplace accounts that are being used to sell products or inventory not authorized by Plaintiff which bear the EXLEAF mark;

g. operating and/or hosting websites which are involved with the distribution, marketing, advertising, offering for sale, or sale of products or inventory not authorized by Plaintiff which bear the EXLEAF mark;

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, Etsy, DHgate, and Temu (collectively, the "Third Party Providers"); sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the EXLEAF mark;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods using without authorization the EXLEAF mark; and

c. take all steps necessary to prevent links from Defendants' Internet Stores from displaying in search results, including, but not limited to, removing links to Defendants' e-commerce stores from any search index;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the mark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the EXLEAF mark;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs as available under 15 U.S.C. § 1117, and other applicable law;

6) Award any and all other relief that this Court deems just and proper.

Date: November 17, 2026.

Respectfully submitted,

/s/ Andrew Palmer

Andrew J. Palmer
Palmer Law Group, P.A.
110 East Broward Blvd, Suite 1700
Fort Lauderdale, FL 33301
Phone: 954-491-1300
ajpalmer@palmerlawgroup.com
***Attorney for Plaintiff***

**Schedule A Defendants**

| Def. # | Seller Aliases | Defendants' Store URLs |
|---|---|---|
| 1 | Good value for money.bing | https://www.walmart.com/global/seller/102747858 |
| 2 | TUTUTUZENG | https://www.walmart.com/global/seller/101294799 |
| 3 | YUMING | https://www.walmart.com/global/seller/103125705 |
| 4 | UFang | https://www.walmart.com/global/seller/103148712 |
| 5 | Wuqjun | https://www.walmart.com/global/seller/103140488 |
| 6 | NinePine Store | https://www.walmart.com/global/seller/103215834 |
| 7 | Forward Mart | https://www.walmart.com/global/seller/103212216 |
| 8 | DailyVibe Mart | https://www.walmart.com/global/seller/103158961 |
| 9 | SRDiscount .store | https://www.walmart.com/global/seller/102901138 |
| 10 | Langcheng Trading | https://www.walmart.com/global/seller/103251385 |
| 11 | Wangw | https://www.walmart.com/global/seller/103158846 |
| 12 | Nuvora VivoHome | https://www.walmart.com/global/seller/103252644 |
| 13 | WETR | https://www.walmart.com/global/seller/103252585 |
| 14 | A Shop for the Home | https://www.walmart.com/global/seller/103210773 |
| 15 | THE QIONG STORE | https://www.walmart.com/global/seller/103238259 |
| 16 | HomeVista | https://www.walmart.com/global/seller/103112323 |
| 17 | Gocai Shen | https://www.walmart.com/global/seller/103152705 |
| 18 | Prime Select Shop | https://www.walmart.com/global/seller/103221459 |
| 19 | Jindepen | https://www.walmart.com/global/seller/103158874 |
| 20 | Hong Kong Chunye Limited | https://www.walmart.com/global/seller/103207421 |
| 21 | yha | https://www.walmart.com/global/seller/103202915 |
| 22 | dongguanshidengjiangwenmaoyi | https://www.walmart.com/global/seller/102754248 |
| 23 | dongguanshihongwukeji | https://www.walmart.com/global/seller/102754137 |
| 24 | Yangjing Trading | https://www.walmart.com/global/seller/103158148 |
| 25 | JDEFEG Clothing | https://www.walmart.com/global/seller/101242339 |
| 26 | Hongqi Clothing | https://www.walmart.com/global/seller/102613110 |
| 27 | 2DXuixsh Clothing | https://www.walmart.com/global/seller/101243493 |
| 28 | DAFEI | https://www.walmart.com/global/seller/102615502 |
| 29 | xiaofei123 | https://www.walmart.com/global/seller/103149401 |